## United States Bankruptcy Court, Northern District of Illinois

| NAME OF ASSIGNED JUDGE | Thomas M. Lynch | CASE NO. | 17 AP 96028 |
|---|---|---|---|
| DATE | March 27, 2019 | | |
| CASE TITLE | The Busey Bank v. Timothy Cosman (In re Timothy Cosman and Rebecca L. Cosman) | | |
| TITLE OF ORDER | Order | | |

**DOCKET ENTRY TEXT**

Defendant Busey Bank's Amended Motion for Protective Order (ECF No. 46) is DENIED.

[For further details see text below.]

## STATEMENT

Busey Bank brings this adversary proceeding to determine whether certain alleged debt owed by Debtor Timothy Cosman should be excepted from discharge under section 523(a) of the Bankruptcy Code. In its Complaint to Determine Non-Dischargeability of Debt, the Bank alleges that it had relied on the Defendant's materially false personal financial statements for the years 2011, 2012, 2013 and 2014, (Compl. ¶ 10), certain lists of land farmed, (Compl. ¶ 11), and upon his false representations, false pretenses or actual fraud when it extended and renewed loans to him, (e.g., Compl. ¶¶ 10-11, 19, 30-31, 33-34). The complaint further claims that the Defendant sold its collateral without the lender's knowledge or consent, alleging both larceny and willful and

malicious injury to collateral. (Compl. ¶¶ 20-25, 36, 38.) The Defendant has answered the complaint, the parties are at issue and discovery is underway.

The Bank requests (ECF No. 46, the "Motion") permission not to respond to certain discovery requests relying on FED. R. CIV. P. 26. In its "Amended Motion for Protective Order," the Bank seeks an order to "prohibit[] the Defendant from engaging in any discovery on issues involving alleged forged signatures on loan documents, alleged backdated loan documents, and alleged lost loan documents." (Pl.'s Mot. ¶ 20.) Its request rests principally on two loan-related documents allegedly signed by the Defendant and his spouse in 2016:

- Agreement for Deed in Lieu of Foreclosure dated May 10, 2016 which purportedly acknowledges the Cosmans' liability under their previous loan instruments and documents, including their security instruments; and
- Consent to Voluntary Repossession of Collateral dated March 18, 2016 which contains language acknowledging their liability for their deficiency balance.

By these documents, the Bank contends, the Cosmans admitted the validity of the loan instruments well after defaulting on the Busey Bank loans. As the Bank frames it, "all of the loan documentation was validly signed by each of them" and the Bank's loans are "properly collateralized." (Pl.'s Mot. ¶ 17.) The Bank contends that these acknowledgments preclude the Defendant from denying the validity of the referenced loan documents. Accordingly, it is the Bank's position that any discovery regarding alleged forgeries of the earlier loan documents, alleged backdating and claimed lost loan documents is "wholly irrelevant and unlikely to lead to the discovery of relevant information." (Pl.'s Mot. ¶ 20.)

The Debtor disputes the Bank's central arguments, claiming that its discovery requests concern relevant, necessary and probative matters that are not beyond dispute, and that he has agreed to limit the scope and manner of this discovery so that it will be proportional and not unduly

burdensome. Following a hearing at which the parties had the opportunity to report on the status of discovery and argue the Motion,[1] the court indicated that the Bank's request will be denied. This minute order further explains that ruling.

## Statutory Framework

Federal Rule of Civil Procedure 26(b) provides that the general scope of discovery includes:

> [A]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. BANKR. P. 7026 (making applicable FED. R. CIV. P. 26). Information "need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). On a party's motion or its own initiative, the court shall limit the frequency or extent of discovery if it determines the proposed discovery is "outside the scope permitted by Rule 26(b)(1)" or "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C).

Rule 26 was amended in 2015 in part "to restore[] the proportionality factors to their original place in defining the scope of discovery." FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 amendment. When a dispute arises "the parties and the court have a collective responsibility to consider the proportionality of all discovery." *Id.* The advisory committee's notes further explain:

> A party claiming undue burden or expense ordinarily has far better information – perhaps the only information – with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by

---

[1] During a subsequent hearing held on March 14, 2019, the Defendant stated that he no longer intends to take discovery concerning backdated loan documents.

the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

*Id.* In determining the appropriate scope of discovery trial courts continue to have "broad discretion" and their decisions are reviewed "deferentially." *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016). *See also Guilbeau v. Pfizer Inc.*, 880 F.3d 304, 318 (7th Cir. 2018); *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 644 (7th Cir. 2011) (noting that even if the underlying discovery ruling was "unreasonable" it will not be disturbed on appeal "absent a clear showing that the denial of discovery resulted in actual and substantial prejudice") (internal quotation omitted).

Analysis

**Relevancy**. The Bank first argues that any evidence relating to the forgery of signatures or loss of files regarding loan documents is not relevant because the March 18, 2016 Consent to Voluntary Repossession of Collateral and the May 10, 2016 Agreement for Deed in Lieu of Foreclosure signed by Mr. Cosman acknowledge the existence and validity of the 2014 and 2015 loan and security agreements.[2] Information is relevant if it is "reasonably calculated to lead to the discovery of admissible evidence." *In re Boone Cty. Utilities, LLC*, 518 B.R. 511, 516 (Bankr. S.D. Ind. 2014) (citation omitted). *See also In re Wapotish*, No. ADV. 07-A-96082, 2009 WL 1916971, at *5 (Bankr. N.D. Ill. July 2, 2009) (quoting *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006)). The relevancy standard is broadly interpreted and allows discovery "if there is any possibility that the information sought may be relevant to the claim or defense of any

---

[2] Although the Bank also attaches to its Motion a copy of a Judgment Order dated February 26, 2016 of the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, entering a total judgment of $5,513,242.71 against the Debtors in favor of the Bank, it raises no argument of *res judicata*, collateral estoppel or the like. The state court judgment contains no findings of fact or conclusions of law other than a calculation of principal, interest, late fees and attorney's fees as of the date of the judgment. Nor does the Bank attach a copy of the complaint or other materials from the state court action.

party." *In re Capuccio*, 558 B.R. 930, 935 (Bankr. W.D. Okla. 2016) (internal quotation omitted). "Courts have broadly defined 'relevant' to include 'any matter that bears on, or that reasonably could lead to other matters that could bear on any issue that is or may be in the case.'" *Smith v. Sharp*, No. 11 C 50382, 2013 WL 2298142, at *2 (N.D. Ill. May 24, 2013) (quoting *Oil, Chem. & Atomic Workers Local Union No. 6-418, AFL-CIO v. N.L.R.B.*, 711 F.2d 348, 360 (D.C. Cir. 1983)). However, the "requested discovery must be tied to the particular claims at issue in the case." *Lanigan v. Babusch*, No. 11 C 3266, 2011 WL 5118301, at *1 (N.D. Ill. Oct. 27, 2011) (quoting *Sykes v. Target Stores*, 00 C 5112, 2002 WL 554505, at *3 (N.D. Ill. Apr. 15, 2002)).

Here, the contested discovery requests are relevant to one or more of the Plaintiff's claims. The Bank alleges that it made loans in exchange for promissory notes dated February 28, 2014, April 4, 2014, December 22, 2014, March 16, 2015, and March 19, 2015. (*See generally* Compl. at Ex. "A.") According to the complaint, the Defendant presented false financial statements around that time which the bank relied upon in extending or renewing its loans. The complaint further alleges that in connection with its $475,000 loan on March 16, 2015, the Defendant represented to it that he would use the funds to purchase cattle. (Compl. ¶¶ 12-19.) Further, it alleges that in September 2015, the Defendant represented that he had purchased cattle when he had not. *Id.*

The Motion asserts that the agreement and consent made in 2016 and signed by the Cosmans acknowledge the validity of the earlier loan documents, including the borrowers' signatures and the grant of security interest to the Bank. (*E.g.*, Pl.'s Mot. ¶¶ 11-12.) Accordingly, the Bank argues that discovery regarding lost, forged or backdated loan documents made prior to 2016 is "wholly irrelevant and unlikely to lead to the discovery of relevant information." (Pl.'s Mot. ¶ 15). The 2016 documents, however, say nothing about the dischargeability of the obligation,

nothing about the truthfulness of any representations that the Defendant made in 2015, nothing about the bank's reliance on any representations made in 2015, and nothing about the transfer of property in 2015 or the Defendant's mental state in 2015. Busey has not offered any theory to explain why the Defendant is legally precluded from now contesting the accuracy of statements made or affirmed in the 2016 agreements. It does not argue, for example, that the 2016 agreements were a novation of the existing debt nor allege that the Defendant made false representations in connection with the 2016 agreements.³ Even if the Defendant's alleged signatures found on the 2016 agreements constitute some form of ratification of the earlier loan documents, the circumstances surrounding the signatures, dates and existence of the 2014 and 2015 agreements remain relevant to the claims of dischargeability asserted in the complaint. Further, the deposition testimony of Ms. Cosman also indicates the relevancy of information relating to alleged forgeries of the earlier loan agreements or disappearance of items from those loan files, at least for purposes of discovery. *See In re Capuccio*, 558 B.R. at 935. Thus, even if the Defendant's alleged signature on the 2016 agreements constitutes some form of ratification of the earlier agreements, the circumstances surrounding the signatures, dates and existence of the 2014 and 2015 agreements remain relevant to the claims of dischargeability asserted by the Bank.

Nor are we persuaded by the Bank's argument that Mr. Cosman's invocation of his Fifth Amendment right against self-incrimination while being deposed on these issues somehow renders the subject matter non-relevant. The Fifth Amendment privilege can be invoked in civil cases, *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911 (9th Cir. 2008), including bankruptcy cases

---

³ *But see Archer v. Warner*, 538 U.S. 314, 323 (2003) (concluding that the subsequent "settlement agreement and releases may have worked a kind of novation, but that fact d[id] not bar . . . [a] showing that the settlement debt arose out of" false pretenses or representation, or actual fraud).

and adversary proceedings. *See* 11 U.S.C. §§ 344, 727(a)(6); *see also McCormick v. Banc One Leasing Corp. (In re McCormick)*, 49 F.3d 1524, 1526 (11th Cir. 1995). The "prevailing rule" is that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *In re Bates,* 545 B.R. 183, 191 (Bankr. W.D. Tex. 2016) (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976)); *see generally Allen v. Illinois,* 478 U.S. 364 (1986).

But the inference is not a finding. Nor is the inference mandatory. "[I]t *may* be drawn, but it does not necessarily need to be drawn." *Daniels v. Pipefitters' Ass'n Local Union No. 597,* 983 F.2d 800, 802 (7th Cir. 1993); *In re Carp,* 340 F.3d 15, 23 (1st Cir. 2003) (discussing that "in a civil proceeding, the drawing of a negative inference is a permissible, but not an ineluctable, concomitant of a party's invocation of the Fifth Amendment"). Indeed, the adverse interest can only be drawn as to questions that are actually asked and cannot be applied to questions never propounded. *Doe ex rel. Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1265-66 (9th Cir. 2000); *see also id.* at n.2. Silence on the part of the invoking witness is to be "given no more probative value than the facts of the case warrant[]." *Cf. Lefkowitz v. Cunningham,* 431 U.S. 801, 808 n.5 (1977). "[A]dditional evidence to corroborate" the presumption is required for the inference to be drawn. *Thompson v. City of Chicago,* 722 F.3d 963, 976 (7th Cir. 2013). The court must reject any contrary suggestion that it can make a finding against the Defendant solely based upon his invocation of privilege and without taking evidence on those issues.

Drawing the negative inference at preliminary stages of litigation, such as at summary judgment or where the privileged is invoked during discovery, is particularly disfavored. *See In re Marrama,* 445 F.3d 518, 522-24 (1st Cir. 2006) (noting the court's prior "express[ion of] doubt as

to whether a court can draw the same inference at the summary judgment stage, where all reasonable inferences must be drawn for the non-movant"). *See also Carp*, 340 F.3d at 23-25. Not surprisingly, the Bank offers no authority for the proposition that the inference should or can be drawn to preclude discovery of potentially probative evidence, particularly where, as here, the evidence on the disputed point is not in the sole possession of the party invoking the privilege. We conclude that it is not appropriate to now do so here.

**Proportionality.** Finally, the Bank invokes the second prong of amended Rule 26's standard to make the conclusory argument that "the expense of all discovery involving alleged forged signatures on loan documents, alleged backdated loan documents, and alleged lost loan documents will far exceed any likely benefit." (Pl.'s Mot. ¶ 16). "[C]ourts are unanimous in prohibiting discovery from being used as a fishing expedition." *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018) (internal footnote, citation and quotation omitted). A "court may limit the discovery if its burden does outweigh its likely benefit." *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 571 (N.D. Ill. 2004) (citation omitted). "To make the determination, the Court will consider . . . the needs of the case, the amount in controversy, the resources of the parties, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id.* Whether requested relevant matter is "proportional to the needs of the case" turns on the "importance of the issues . . ., the amount in controversy, . . . relative access . . ., [respective] resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b). The court has broad

discretion on ruling on this issue and tailoring the scope of permitted discovery. *See Charvat v. Valente*, 82 F. Supp. 3d 713, 717 (N.D. Ill. 2015).

It remains necessary, however, to show good cause for a protective order, with the burden of persuasion to be borne by the party seeking the order. 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 2035 n.37 (3d ed. 2010) (citing *Traynor v. Liu*, 495 F. Supp. 2d 444 (D. Del. 2007)). The movant seeking an order of protection "carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad." *See E.E.O.C. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 639 F.3d 366, 371 (7th Cir. 2011) (quoting *E.E.O.C. v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002)). However, the Bank makes this argument without proof of actual disproportionate effect. It offers only a general claim of disproportionality and does not present evidence that this discovery is in fact disproportional, unduly burdensome or unreasonably broad. There is no showing that the disputed discovery amounts to an impermissible "fishing expedition." Indeed, this information or much of it appears to be in the Bank's possession. As such, consideration of relative access to the information and the cost of obtaining it (or confirming its non-existence) would appear to weigh in favor of the requesting party. While the value of this discovery remains to be determined, the Bank has not shown that its burden in fact will outweigh the importance of this information to the resolution of the issues, nor otherwise demonstrated that good cause exists for the requested protective order.

Accordingly, the motion is DENIED.

_/s/ Thomas M. Lynch_
Thomas M. Lynch
United States Bankruptcy Judge