# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| In re Timothy Cosman and<br>Rebecca L. Cosman, | ) | Bankruptcy Case 16-81577 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| Busey Bank, | ) | Adversary No. 17-96028 |
| | ) | |
| Plaintiff, | ) | Chapter 7 |
| v. | ) | |
| | ) | Judge Thomas M. Lynch |
| Timothy Cosman, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

In 2014 and 2015, Timothy Cosman (the "Debtor") procured a variety of loans from Busey Bank (the "Bank") in connection with his farming operation.[1]  These loans were not repaid and, on February 26, 2016, a judgment was entered in favor of the Bank and against the Debtor in the amount of $5,513,242.71.  In addition, on October 7, 2019, the Debtor was convicted of bank fraud in violation of 18 U.S.C. § 1344, following his plea agreement in which the Debtor admitted that these loans were obtained as part of a scheme to defraud the Bank. *See United States v. Cosman*, No. 18-CR-20020 (C.D. Ill. Oct. 7, 2019).

---

[1] Rebecca L. Cosman, the Debtor's wife and co-debtor in the underlying bankruptcy case, was also held liable on the various promissory notes by the Circuit Court of the Tenth Judicial Circuit, Peoria County, Illinois, in case number 16-L-43. (*See* ECF No. 109, Ex. 11.)  However, because she is not named as a defendant in this adversary proceeding, the court will only refer to the actions of Timothy Cosman throughout this opinion.

After the Debtor filed for relief under chapter 7 of the Bankruptcy Code, the Bank filed a four-count adversary complaint seeking a determination that the remaining amount due and owing from Debtor is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6). The Bank also seeks a judgment in its favor in the amount of $2,963,841.54 plus fees and costs.

Now before the court is the Bank's motion for summary judgment on all counts of its complaint. The Bank argues that there are no genuine issues of material fact for trial and that Debtor is barred from relitigating the issues raised in this case based on the doctrine of collateral estoppel and his conviction for bank fraud. For the reasons discussed below, the court finds that collateral estoppel does not fully resolve this litigation, but that Busey Bank is nevertheless entitled to summary judgment on its claim under § 523(a)(2)(B).

## JURISDICTION

Discharge being a right expressly created by title 11, proceedings on an objection to a debtor's discharge or to the dischargeability of a debt arise in a case under title 11. *Kontrick v. Ryan*, 540 U.S. 443, 447-48 (2004). Accordingly, this court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The determination of the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and actions to determine the scope of a debtor's discharge is a fundamental part of the bankruptcy process. As such, this court possesses "constitutional authority to hear and finally determine what claims

are non-dischargeable in a bankruptcy case." *Muhummad v. Reed (In re Reed)*, 542

B.R. 808, 815 (Bankr. N.D. Ill. 2015). *See also, e.g., Gasunas v. Yotis (In re Yotis)*, 521

B.R. 625, 631 (Bankr. N.D. Ill. 2014) (citing *Stern v. Marshall*, 564 U.S. 462, 499

(2011)).[2]

## PROCEDURAL BACKGROUND

The Debtor filed his chapter 7 petition for relief on June 30, 2016.  Thereafter,

the Bank filed its Proof of Claim (Claim 17-1) alleging a secured claim in the amount

of $4,370,907.90 based on the outstanding principal balance and interest on four

different loans.[3]  Based on the attachments to the claim, this amount was derived

primarily from a $475,000 loan dated March 16, 2015, and a $5,000,000 loan dated

March 19, 2015.[4]  The Bank later withdrew its claim in the bankruptcy case pursuant

to a settlement agreement that was reached with the Trustee in which Busey Bank

received $1,100,000. (*See* ECF No. 216.)  As part of the settlement agreement, the

Bank "retain[ed] any and all of its rights under Sections 523 and 727 of the United

States Bankruptcy Code . . . as no such rights shall be released." (*Id.*)

---

[2] Additionally, both parties affirmed in open court their consent to this court's authority to enter final orders in this matter on February 12, 2020. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, ___, 135 S. Ct. 1932, 1949 (2015) ("Article III permits bankruptcy courts to decide *Stern* claims submitted to them by consent.").

[3] Although the Bank does not explain how it went from a judgment amount of $5,513,242.71 on February 26, 2016, to its claim of $4,370,907.90 filed on October 20, 2016, the court need not concern itself with the source of this reduction as no one has raised an issue on this point.

[4] Throughout this case, the Bank has referenced ten separate promissory notes that were signed by the Debtor in 2014 and 2015, but it has failed to clearly identify which particular loans formed the basis for its original claim or the remaining amount due that it is now seeking.  Based on the court's review of the evidence in the record, and in particular Exhibit A to the Second Affidavit of Steven E. Henderson (ECF No. 118), it is apparent that the two loans identified above from March 2015 are the ones directly relevant to the court's analysis.  Accordingly, for the sake of clarity and to avoid further confusion, the court will only focus on those two loans in this opinion.

On October 30, 2017, the Bank filed the instant adversary complaint alleging that the Debtor "borrowed substantial sums from Busey Bank in loans extended or renewed in reliance upon the personal financial statements and representations prepared by the Debtor and submitted to Busey Bank." (ECF No. 1 at 2.)  The Bank further alleged that, after applying all amounts received since its claim was filed, including the $1,100,000 received pursuant to the settlement agreement, the Debtor still owed the sum of $2,963,841.54 under the notes. (*Id.* at 3.)

The Bank claims that the Debtor submitted several materially false financial statements in order to induce Busey Bank to extend these loans.  These include financial statements for years 2011 through 2014 which "grossly inflated the amount and value of the Debtor's farm equipment, grain and other assets" and lists of land farmed that "grossly misstated amount of acreage being farmed by Debtor to inflate the value thereof." (*Id.*)  Based on these allegations,[5] the Bank asserts that the Debtor's remaining debt is non-dischargeable under: (1) section 523(a)(2)(A) based on the Debtor's false statements relating to the farm lists; (2) section 523(a)(2)(B) based on the Debtor's false financial statements; (3) section 523(a)(4) based on the Debtor's larceny; and (4) section 523(a)(6) based on the willful and malicious injury to the Bank 's cash collateral.

---

[5] The Bank also alleges several bad acts committed by the Debtor after the loans were disbursed, including submitting fraudulent documents showing that he used the proceeds from the $475,000 loan to purchase cattle, selling certain collateral in violation of the bank's various security agreements, and attempting to deposit a check with a forged endorsement of the Bank. (*See* ECF No. 1 at 4-8.)  However, these allegations are not essential to the court's analysis and need not be discussed in more detail.

While this adversary proceeding was pending, the Debtor plead guilty and was convicted of bank fraud in violation of 18 U.S.C. § 1344.  On October 7, 2019, the Debtor was sentenced to 36 months' imprisonment, 60 months of supervised release, and ordered to pay restitution to Busey Bank in the full amount of its damages of $2,963,841.54.  Despite this criminal judgment and the Debtor's purported acceptance of responsibility at the time of sentencing, the Debtor elected to continue to defend this adversary case.  As a result, on December 16, 2019, the Bank filed this motion and its supporting materials. (*See* ECF Nos. 107-110.)  The motion argues that the Bank is entitled to judgment on each of its counts as a matter of law based on the doctrine of collateral estoppel because all of the necessary elements for its claims of non-dischargeability were established by the defendant's guilty plea and conviction.  By application of the doctrine, the Bank contends that the Debtor should be barred from re-litigating those issues in this case.  In response, the Debtor contends that collateral estoppel is not appropriate and that genuine issues of material fact remain on the issues of reliance and damages. (*See* ECF Nos. 112-114.)

## FACTS

The following facts are based on the court's careful review of the parties' respective statements of facts and responses pursuant to Local Rules 7056-1 and 7056-2 and are either undisputed or have been deemed admitted based on the Debtor's failure to properly controvert the facts as required by Fed. R. Bankr. P.

7056(c)[6] and Local Rule 7056-2.

On February 28, 2014, the Debtor obtained a line of credit in the amount of $4,000,000 from the Bank to be used for the Debtor's farming business (Loan 17415). This loan was subsequently replaced on March 6, 2015, with a new loan in the amount of $4,250,000, and then replaced again on March 19, 2015, with a $5,000,000 loan. In each instance, the Debtor executed a promissory note in favor of Busey Bank that was secured by, among other things, the Debtor's inventory and crops. On March 16, 2015, the Debtor obtain an additional loan from the Bank in the amount of $475,000 for the stated purchase of 250 heifers (Loan 20375), but the Debtor never purchased the cattle with these proceeds.

Before the Debtor obtained from the Bank the initial $4,000,000 line of credit reflected in Loan 17415, he prepared and submitted a materially false financial statement purporting to show his assets and liabilities as of December 26, 2013. In the December 2013 statement, the Debtor falsely stated that he had a 20 percent ownership interest in Cosman Farms, LLC, valued at $2,000,000, and a 20 percent ownership interest in Cosman Family Limited Partnership valued at $1,000,000. In fact, the value of his ownership interests was substantially below the amount represented. (*See* ECF No. 110, Ex. 2 at 10-11.) The December 2013 statement also included an itemized list of farming machinery, equipment, and trucks purportedly

---

[6] Rule 56 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings in a bankruptcy case by Federal Rule of Bankruptcy Procedure 7056. Hereinafter, the court will refer to Rule 56 when evaluating the Bank's summary judgment motion.

owned by the Debtor, but the Debtor did not own every item listed.[7]

In March 2015, the Debtor submitted another materially false financial statement showing his assets and liabilities as of December 30, 2014. In the December 2014 statement, the Debtor falsely claimed 20 percent ownership interests in Cosman Farms, LLC, and Cosman Family Limited Partnership that were valued at $2,106,000 and $1,197,000, respectively, even though the actual values were substantially lower. (*See* ECF No. 110, Ex. 2 at 11.) The December 2014 statement also falsely stated that the Debtor was the beneficiary of a promissory note executed by the Debtor's father in the amount of $1,500,000. In addition, the December 2014 statement included lists of land being farmed by the Debtor which grossly misstated the amount of acreage farmed.[8]

---

[7] The facts in the preceding paragraph are set out in the Bank's statement of material facts and supported with specific references to an affidavit and other parts of the record. (*See* ECF No. 110 ¶ 17.) In response, the Debtor states "Admitted, subject to additional facts set forth" with no further indication of what additional facts he was relying on. (ECF No. 114 ¶ 17.) This type of response is insufficient to controvert the Bank's statement under Rule 7056-2, which requires "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 7056-2(A)(2)(a). *See also Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."). Moreover, the court has carefully reviewed the exhibits attached to the Debtor's statement of additional facts—the Debtor's affidavit and excerpts from the deposition of Jeffrey Rohlwing—and nothing in those exhibits directly refutes any of the facts listed in ¶ 17 of the Bank's statement of material facts. The court does acknowledge that there may be some confusion in the record as to the date when the December 2013 statement was actually submitted to the Bank because page 2 of the statement shows a "Date Signed" of "7-10-14." (ECF No. 109, Ex. 14.) Ultimately, however, this potential dispute is not material as there is no dispute that the December 2013 statement was in the Bank's possession before March 2015 when Loan 17415 was increased to $5,000,000 and Loan 20375 in the amount of $475,000 was made.

[8] Once again, the court finds that the facts in the preceding paragraph are properly set forth in the Bank's statement of material facts, (ECF No. 110 ¶¶ 18-20), and will be deemed admitted for purposes of this opinion. *See* Local Rule 7056-2(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). The Debtor admits the facts alleged in paragraphs 18 and 19 "subject to additional facts" but fails to identify what those facts are. (*See* ECF No. 114 ¶¶ 18-19.) This is insufficient for the same reasons discussed above. *See supra* note 7. As for paragraph 20, the Debtor's only response is "Denied,"

In his plea agreement in the criminal case, the Debtor admitted that the false financial statements discussed above were part of a "scheme to defraud Busey Bank and obtain money from the business loans." (ECF No. 110, Ex. 2 at 10-11.)  It was further part of the scheme to defraud that the Debtor "represented to the Bank that [he] had sufficient collateral to secure the loans." (*Id.* at 10.)   The Debtor's "representations as to [his] assets and the purpose of his loans were material in that Busey Bank was influenced by the [Debtor's] representations when lending money to the [Debtor]." (*Id.*)  The Bank relied on the information provided by the Debtor stating his assets and liabilities and would not have loaned any of the money to the Debtor had it known the Debtor's true financial circumstances and the false representations that were made to the Bank.  The Debtor further admitted in his plea agreement, among other things, that he knowingly executed the scheme with the intent to defraud the Bank and that the scheme involved materially false or fraudulent representations. (*See id.* at 3, 9.)

At the time the Debtor filed his chapter 7 petition, the Bank  claimed a loss of $4,370,907 based on the Debtor's use of fraudulent financial statements. (*See* Claim 17-1.)  Following its settlement with the Trustee and other transactions, the Bank now asserts a loss of $2,963,841.54.  According to Group Exhibit A attached to Henderson's second affidavit, this amount is based on the remaining amounts due on Loan 17415 ($2,488,841.54) and Loan 20375 ($475,000).  The court further finds

---

which does not comply with the Local Rule and as such has the same effect as admitting the facts. *See Cracco*, 559 F.3d at 632; *see also Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) ("This Court has consistently upheld . . . judges' discretion to require strict compliance with Local Rule 56.1.").

based on Henderson's first affidavit, (ECF No. 109 ¶¶ 3, 33-34), the Debtor's admissions in his plea agreement, (ECF No. 110, Ex. 2 at 10), and the facts from paragraphs 36-37 of the Bank's statement of material facts which are deemed admitted based on the Debtor's failure to properly controvert them (ECF No. 114 ¶¶ 36-37), that Busey Bank actually relied on the Debtor's false financial statements in deciding to extend Loans 17415 and 20375 to the Debtor in March 2015.[9]

## <u>DISCUSSION</u>

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the court must decide, based on the evidence available, whether there is a material fact in dispute that requires a trial. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making that determination, all reasonable inferences drawn from the underlying facts should be viewed in the light most favorable to the nonmovant. *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 560 (7th Cir. 2011).  The court makes this determination in light of the evidentiary standard that would be used at trial. *Valley Liquors, Inc. v. Renfield Imps., Ltd.,* 822 F.2d 656, 659 (7th Cir. 1987) (citing *Anderson*, 477 U.S. at 252).

---

[9] The legal determination of whether this actual reliance was also reasonable will be discussed later in this opinion.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

>   (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Bankr. N.D. Ill. R. 7056-2(B). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion or grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it. Fed. R. Civ. P. 56(e). "[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *United States v. Luce*, 873 F.3d 999, 1008 n.31 (7th Cir. 2017) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)); *Draka v. Andrea (In re Andrea),* 597 B.R. 626, 632 (Bankr. N.D. Ill. 2019).

## Collateral Estoppel

The doctrine of collateral estoppel is applicable in bankruptcy proceedings and can be used to determine the dischargeability of a debt under § 523(a). *See Grogan v.*

*Garner*, 498 U.S. 279, 285 n.11 (1991). "Bankruptcy courts ordinarily make independent decisions as to whether debts are nondischargeable under the various provisions of § 523(a). It is well established, however, that the doctrine of collateral estoppel, or issue preclusion, applies in bankruptcy discharge exception proceedings." *Thazhathuputhenpurac v. Abraham (In re Abraham)*, 582 B.R. 202, 211 (Bankr. N.D. Ill. 2018) (citing *Grogan*, 498 U.S. at 284 n.11). Therefore, a "creditor may invoke issue preclusion to avoid . . . litigation of the elements necessary to meet a § 523(a) exception." *Gerard v. Gerard*, 780 F.3d 806, 810 (7th Cir. 2016). "By precluding the re-litigation of the same factual issues between the same parties, collateral estoppel preserves judicial resources, lessens the cost and vexation of multiple lawsuits, and prevents the issuance of inconsistent decisions." *Abraham*, 582 B.R. at 211.

There are four requirements that must be shown in order to apply collateral estoppel: "1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action." *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987). Collateral estoppel can be applied based on a criminal conviction. *See, e.g.*, *Nathan v. Tenna Corp.*, 560 F.2d 761, 763 (7th Cir. 1977) ("In this Circuit, a criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted."); *Edgewater Med. Ctr. v. Rogan (In re Edgewater Med. Ctr.)*, 332 B.R. 166, 173 (Bankr. N.D. Ill. 2005)

("Collateral estoppel may be applied in civil trials to issues previously determined in a criminal conviction."); *American Nat'l Bank & Tr. Co. v. Cooper (In re Cooper)*, 125 B.R. 777, 780 (Bankr. N.D. Ill. 1991) ("A guilty plea satisfies the 'actually litigated' requirement for collateral estoppel.").

In his response to the motion for summary judgment, the Debtor argues that the court should not apply collateral estoppel in this case because "the proof required of plaintiff to prevail in this matter is not all encompassed in the guilty plea." (ECF No. 113 at 3.)  While the court agrees that there is not a perfect match between the Debtor's criminal conviction and the elements of all the various non-dischargeability claims raised by Busey Bank, collateral estoppel may still be appropriate to at least some of those claims and the elements sufficient to warrant relief under Rule 56 as discussed below.

The Debtor also argues, without offering any supporting authority, that collateral estoppel is not appropriate in this case because the Debtor did not receive any admonition as to the effect his plea agreement could have on his bankruptcy.  The court is not persuaded by this argument.  It is undisputed that the Debtor was represented by counsel throughout his criminal proceeding.  The Debtor also had retained counsel in his bankruptcy case during all critical stages of his criminal case, including at the time he entered into his plea agreement and at the time of sentencing.  Under these circumstances, the court must conclude that there is no genuine issue of material fact on the issue of whether the Debtor was "fully represented in the prior action." *Klingman*, 831 F.2d at 1295; *see also In re Complaint*

*of Am. River Transp. Co.*, 712 F. Supp. 2d 735, 742 (N.D. Ill. 2010) ("[C]ivil litigation in connection with the accident had already been initiated at the time of Aardema's plea. Thus . . . Aardema had every reason to consider the ramifications that his plea might have for the civil case."). Accordingly, the court finds that it is not unfair to apply the doctrine of collateral estoppel in this case, where appropriate.

## Section 523(a)(2)(A)

The party seeking to except her debt from discharge bears the burden of proof by a preponderance of the evidence. *Grogan*, 498 U.S. at 291. "The determination of whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case." *U.S. Life Title Ins. Co. of N.Y. v. Wade (In re Wade)*, 26 B.R. 477, 480 (Bankr. N.D. Ill. 1983). Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). "[A] statement is 'respecting' a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status," even where it is a "statement about a single asset." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1761 (2018).

In order to establish a claim under § 523(a)(2)(A), the Bank needs to point to a misrepresentation that was "other than a statement respecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2)(A). It has failed to do so. In its memorandum, the Bank asserts that the Debtor made "multiple intentional

misrepresentations about his financial state" including representing that he had "sufficient collateral to secure the loans," submitting several documents "misrepresenting his financial state" which contained "misrepresentations about the percentage of his ownership of businesses, the value of his real estate, and the value of farming equipment," and fraudulently representing that he was owed $1,500,000 from his father. (*See* ECF No. 108 at 5-6.)  Moreover, in its complaint, the Bank alleged that its claim under § 523(a)(2)(A) was based on the "false representations . . . contained in or relating to the Farm Lists and statements made to Busey Bank," but these lists of land farmed by the Debtor relate to his overall financial status. *See Appling*, 138 S. Ct. at 1761.  Because Busey Bank has failed to establish a debt obtained by any misrepresentation other than a statement concerning the Debtor's financial condition, its request for summary judgment on Count I of its complaint is denied.

## Section 523(a)(2)(B)

Section 523(a)(2)(B) excepts from discharge any debt

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . .

(B) use of a statement in writing--

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive . . . .

11 U.S.C. § 523(a)(2)(B).  "[T]o prevail on a claim under this section, the creditor must prove that the debtor made a materially false written statement about his financial condition with the intent to deceive, and that the creditor reasonably relied on the statement." *In re Cohen*, 507 F.3d 610, 613 (7th Cir. 2007).

Here, there is no dispute the Debtor's criminal conviction establishes, for purposes of collateral estoppel, that "the debtor made a materially false written statement about his financial condition with the intent to deceive," *id.*, which satisfies most of the elements of the Bank's § 523(a)(2)(B) claim.  In particular, as part of his plea agreement, the Debtor admitted that he provided the Bank with written statements that contained materially false representations about his financial condition, including the December 2013 and December 2014 statements. (ECF No. 110, Ex. 2 at 10-11.)  The Debtor further admitted that his actions were part of a scheme to defraud the Bank and were done knowingly and with the intent to deceive the Bank in order to obtain loans. (*Id.* at 3, 9.)  And importantly, a determination on each of these issues was essential to establishing the elements of the Debtor's bank fraud conviction. (*See id.* at 3 (listing the elements of the offense of bank fraud under 18 U.S.C. § 1344); *id.* at 9 ("The defendant will plead guilty because the defendant is in fact guilty.")  Accordingly, the court concludes that each of these elements of the Bank's claim of non-dischargeability have been established through collateral estoppel. *See Klingman*, 831 F.2d at 1295.

That leaves only one issue still in dispute: whether Busey Bank reasonably relied on the Debtor's written statements. *See* 11 U.S.C. § 523(a)(2)(B)(iii).  As

discussed above, there is no factual dispute that the Bank actually relied on the Debtor's false statements, but that does not establish whether that reliance was also reasonable. *See Calumet Nat'l Bank v. Gallagher (In re Gallagher)*, 72 B.R. 830, 835 (Bankr. N.D. Ind. 1987) ("Reliance in fact or actual reliance is not the same as reasonable reliance.").

The Bank relies on the doctrine of collateral estoppel in its memorandum to argue that the issue of reasonable reliance is established by the Debtor's guilty plea. The Debtor counters that reliance cannot be established by his plea agreement because "there is no way that the debtor could have any knowledge as to the extent or nature of the bank's reliance upon his statements." (ECF No. 113 at 3.) Neither party is correct. The analysis is rather straightforward—collateral estoppel does not apply to the element of reasonable reliance here because no such finding was necessary to find the Debtor guilty of bank fraud. *See Klingman*, 831 F.2d at 1295 (requiring that "the determination of the issue must have been essential to the final judgment" in order for collateral estoppel to apply). *See also In re Esposito*, 44 B.R. 817, 823 (Bankr. S.D.N.Y. 1984) ("[T]he doctrine of collateral estoppel, as applied in this case, cannot establish reasonable reliance on the part of the Banks, for that was not an element of his criminal conviction.").

A conviction for bank fraud requires, among other things, proof that the defendant's scheme to defraud involved a materially false or fraudulent pretense, representation, or promise. (*See* ECF No. 110, Ex. 2 at 3); *see also* Pattern Criminal Jury Instructions of the Seventh Circuit, *18 U.S.C. § 1344(a) Scheme to Defraud a*

*Financial Institution – Elements*.  "Materiality requires only the tendency or capability of influencing the victim; there is no requirement that the misrepresentations must have actually influenced the decision-maker or that the decision-maker in fact relied on the misrepresentations." *United States v. O'Brien*, 953 F.3d 449, 460 (7th Cir. 2020); *see also United States v. Reynolds*, 189 F.3d 521, 525 (7th Cir. 1999) ("A statement is material if it would be capable of influencing the decisionmaker's decision; as we have said, there is no requirement that the statement must in fact influence the decisionmaker (that would be reliance).").  Because the government was not required to show that the Bank relied on the Debtor's false statements in order to obtain a conviction for bank fraud, the Debtor's criminal conviction cannot be used to establish reasonable reliance for purposes of § 523(a)(2)(B).

The fact that collateral estoppel does not serve to establish the necessary proof of reasonable reliance, however, does not mean summary judgment is inappropriate in this case.[10]  The reasonableness of a creditor's reliance is analyzed on a case-by-case basis, *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989), but the court is not required "to undertake a subjective evaluation and judgment of a creditor's lending policy and practices," *In re Garman*, 643 F.2d 1252, 1256 (7th Cir. 1980), or to "second-guess a creditor's lending decisions," *In re Morris*, 223 F.3d 548, 553 (7th Cir.

---

[10] In support of its § 523(a)(2)(B) claim, the Bank incorrectly argues that it "justifiably relied on the Debtor's statements." (ECF No. 108 at 9).  That less demanding reliance standard is applicable to claims under § 523(a)(2)(A), not § 523(a)(2)(B). *See Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010) (explaining that "[j]ustifiable reliance is a less demanding standard than reasonable reliance"); *see also Field v. Mans*, 516 U.S. 59, 74–75 (1995) ("[W]e hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance.").  The court does not find, however, that this misstatement precludes considering the issue under the appropriate legal standard.

2000).   Furthermore, "the concept of reasonable reliance does not generally require creditors to conduct an investigation prior to entering into agreements with prospective debtors." *Morris*, 223 F.3d at 554; *see also Garman*, 643 F.2d at 1259-60 ("[A]lthough a creditor is not entitled to rely upon an obviously false representation of the debtor, this does not require him or her to view each representation with incredulity requiring verification.").   In short, "a creditor should not be denied protection against discharge unless the creditor's claimed reliance on a financial statement would be so unreasonable as not to be actual reliance at all." *Morris*, 223 F.3d at 553; *see also Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 676 (7th Cir. 1995) ("A victim who lacks access to the truth, and has not been alerted to facts that would alert him to the truth, is not to be . . . blocked by a discharge under the bankruptcy laws . . . just because he did not conduct a more thorough investigation.").[11]

In this case, no evidence was presented to suggest that Busey Bank had actual knowledge that the Debtor's December 2013 and December 2014 financial statements were inaccurate and contained materially false statements regarding the Debtor's

---

[11] Although a number of the cases cited in *Morris* pre-date the Supreme Court's ruling in *Field v. Mans*, 516 U.S. 59 (1995), nothing in *Field* sets forth or modifies the standard for "reasonable reliance" under Section 523(a)(2)(B).   *Field* involved the unstated standard for reliance under Section 523(a)(2)(A), which the Supreme Court held, based on the "established practice of finding Congress's meaning in the generally shared common law when common-law terms are used without further specification . . . that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance." 516 U.S. at 74-75. Similarly, the Seventh Circuit's opinion in *Ojeda v. Goldberg* involved only the justifiable reliance standard under Section 523(a)(2)(A). 599 F.3d 71 (7th Cir. 2010) (finding that bankruptcy court had incorrectly required a showing of reasonable reliance).   In contrast, as stated in *Morris*, the "reasonable reliance" requirement set forth in Section 523(a)(2)(B) derives from "section 17(a)(2), the predecessor statute to section 523(a)(2)(B)(iii)," and therefore even cases interpreting "reasonable reliance" under the Bankruptcy Act "appl[y] with equal force to section 523(a)(2)(B)(iii) because 'Congress clearly indicated that section 523(a)(2)(B)(iii) is merely a codification of the cases construing section 17(a)(2).'" 223 F.3d at 553 n.2 (quoting *First Nat'l Bank of Lansing v. Kreps* (*In re Kreps*), 700 F.2d 372, 376 (7th Cir. 1983)).

assets.  In fact, it is undisputed that the Bank would not have made its loans had it known the Debtor's true financial circumstances and that Cosman's representations were false.  There is nothing on the face of the financial statements that would have alerted the Bank that the Debtor was misrepresenting his financial condition or that there was a need for further investigation. *See Mayer*, 51 F.3d at 676; *Esposito*, 44 B.R. at 823.  Under these circumstances, no reasonable factfinder could conclude that Busey Bank 's reliance on the Debtor's financial statements was "so unreasonable as not to be actual reliance at all." *Morris*, 223 F.3d at 553.

The Debtor contends that Busey Bank cannot show reasonable reliance because all of the false representations "could and should have been easily verifiable by the bank." (ECF No. 113 at 6.)  However, "the concept of reasonable reliance does not generally require creditors to conduct an investigation prior to entering into agreements with prospective debtors." *Morris*, 223 F.3d at 554.  The Debtor also argues that "the bank did not request any of the back-up information until <u>after</u> the loan was approved," (ECF No. 113 at 6), but this is just an ineffective attempt to blame the victim for not discovering the Debtor's fraudulent conduct earlier. As the Seventh Circuit cautioned in *Mayer v. Spanel Int'l, Ltd*, 51 F.3d at 675, "[f]raud is an intentional tort, and victims need not take precautions against such torts in order to preserve their rights.  Tolerating fraud by excusing deceit when the victim is too easily gulled increases both the volume of fraud and expenditures on self-defense."

Finally, the Debtor attempts to suggest that a material issue lies with the reasonable reliance element of the § 523(a)(2)(B) claim because Busey Bank did not

offer testimony of Jeffrey Rohlwing, the loan officer responsible for the Debtor's loans, to support this point, but rather relies on the affidavit of Steven Henderson which is based on his review of the bank's business records. This argument, which is not supported by any relevant citation to authority, is without merit. There is no requirement that reasonable reliance be shown by establishing the subjective beliefs of the originating loan officer. Instead, the court uses an "objective test" to measure the reasonableness of a creditor's reliance. *See Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 962–63 (Bankr. N.D. Ill. 1995). It is not required "to undertake a subjective evaluation and judgment of a creditor's lending policy and practices." *Garman*, 643 F.2d at 1256. Moreover, this argument ignores Rohlwing's deposition testimony, which the Debtor submitted and asked the court to consider. At his deposition, Rohlwing explained that the Bank's underwriting department requested and would have been responsible for reviewing the Debtor's balance sheets. (*See* ECF No. 114, Ex. B at 88-89.)

For all these reasons, the court finds that the Bank has established its reasonable reliance on the Debtor's false financial statements and met its burden to show its debt should be excepted from discharge under § 523(a)(2)(B). The Debtor fails to demonstrate the existence of a material factual dispute regarding this claim. Accordingly, the court concludes that the Bank is entitled to summary judgment on its non-dischargeability claim raised in Count II.

## Section 523(a)(4)

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "Larceny under § 523(a)(4) necessitates a showing that a debtor wrongfully took property from its rightful owner with fraudulent intent to convert such property to his own use without the owner's consent." *Vozella v. Basel-Johnson (In re Basel-Johnson)*, 366 B.R. 831, 848 (Bankr. N.D. Ill. 2007); *see also Bank Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 331-32 (Bankr. N.D. Ind. 2006) ("'Larceny' involves a concept in which the debtor has wrongfully acquired property of which another person or entity is the owner."). For Count III, the Bank argues that the Debtor's conviction for bank fraud also establishes larceny for purposes of § 523(a)(4) under the doctrine of collateral estoppel. In support of its argument, the Bank relies on *In re Cooper*, 125 B.R. 777 (Bankr. N.D. Ill. 1991), a case involving a conviction for bank fraud pursuant to 18 U.S.C. § 1344 based on the debtor's check-kiting scheme.

This court is not convinced that the record in the criminal case on which the Bank now relies is so clear, "so one-sided as to rule out the prospect of a finding in favor of the nonmovant." *Bunch v. United States*, 880 F.3d 938, 941 (7th Cir. 2018). The Debtor's plea agreement and criminal conviction establish, for purposes of collateral estoppel, that the Debtor obtained several loans from the Bank based on a series of fraudulent misrepresentations, but it does not establish that the Debtor necessarily intended to convert those loan proceeds to his own use to make out a

larceny claim.[12]  Defrauding the Bank in order to procure a loan does not necessarily mean that the Debtor had no intention of repaying those funds.[13]  In any event, it is clear from the record in the criminal case that this issue was not decided in that case and was not essential to securing the conviction.  *See Klingman*, 831 F.2d at 1295 (requiring that "the determination of the issue must have been essential to the final judgment" in order for collateral estoppel to apply).  Accordingly, the court finds that collateral estoppel cannot be used to satisfy the Bank's burden on its claim under § 523(a)(4).

The Bank's citation to *In re Cooper* does not change this conclusion.  That decision is readily distinguishable from the instant case and does not establish a bright-line rule that all convictions under § 1344 support a claim of non-dischargeability for larceny under §523(a)(4) based on collateral estoppel.  In that case, the debtor "pled guilty to creating a check kiting scheme in which he deposited and withdrew funds from his checking accounts knowing that he had insufficient funds to cover both the initial deposits and the subsequent withdrawals." 125 B.R. at 780.  The Court determined that "[t]hese acts . . . amount to larceny" and that collateral estoppel applied based on the debtor's guilty plea to that conduct.  *Id.*  The check kiting scheme at issue in *Cooper* was akin to stealing money directly from the

---

[12] Indeed, there is a separate federal offense under 18 U.S.C. § 2113(b) which is sometimes referred to as "bank larceny."  The Debtor was neither charged with, nor convicted of, this offense.

[13] In his own words, the Debtor "commenced a business relationship with Busey Bank for the purpose of financing my farm operation in Harvard, IL." (ECF No. 114, Ex. A.)  A reasonable factfinder could infer, for purposes of this summary judgment motion, that the Debtor intended to repay these loans in order to keep his farm operation going.

bank, which is significantly different than the fraud that what was involved in the instant case.

The court also notes that Count III appears to be based in large part on the same false representations that the Bank relied on for its § 523(a)(2)(B) claim. Because the court has already determined that the Debtor's obligations to the Bank are non-dischargeable pursuant to § 523(a)(2)(B), it need not consider further whether this debt would also be non-dischargeable under this alternative theory. To the extent the Bank's claim in Count III also encompasses post-loan misconduct, such as selling certain collateral in violation of the bank's various security agreements or attempting to deposit a check with a forged endorsement, the Bank has failed to show any particular damage from this conduct. In any event, "[a] breach of contractual duties is not functionally equivalent to fiduciary fraud, defalcation, embezzlement or larceny." *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 703 (Bankr. N.D. Ill. 2002).

For all these reasons, the court concludes that the Bank has not met its burden for summary judgment on Count III.

### Section 523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In its memorandum, the Bank acknowledges that if the court entered judgement on its "claim under § 523(a)(2)(A)," then "a judgment under 523(a)(6) would be superfluous." (ECF No. 108 at 11 (citing *Attorneys' Title Guar. Fund, Inc. v. Wolf (In re Wolf)*, 519 B.R. 228 (Bankr. N.D. Ill. 2014).) The court agrees, but also

finds this admission to be equally applicable to its claim under § 523(a)(2)(B) and has the same effect for purposes here.  Accordingly, the court denies the Bank 's claim under § 523(a)(6) as unnecessary and superfluous.

**Damages**

As a final matter, the parties are in dispute over the question of damages.  The Bank argues that the amount of damages has been established as $2,963,841.54 based on the indictment in the Debtor's criminal case, the restitution order which was entered for this same amount, and Henderson's affidavit. (ECF No. 108 at 14-15.)  The Debtor, on the other hand, contends that the Bank has not met its burden on the issue of damages because (1) a determination of damages was not essential to finding the Debtor guilty and (2) the Debtor has "consistently objected to the amount of the damages claimed by the Bank, and the bank has never been made to actually prove or litigate the amount of its damages." (ECF No. 113 at 4.)

It is clear that the issue of damages is not established through the doctrine of collateral estoppel, especially considering that the plea agreement specifically notes that the parties "have not reached a determination on the issue of restitution." (ECF No. 110, Ex. 2 at 16.)  In any event, the court need not rely on external sources for the damages calculation.  The amount is clearly established in Henderson's affidavit testimony to be $2,963,841.54, (ECF No. 109 ¶ 36), which calculation is supported by the exhibits attached to Henderson's second affidavit.  (ECF No. 118, Ex. A).  The Debtor fails to properly controvert this evidence in his statement of material facts as required by Local Rule 7056-2, (ECF No. 114 ¶ 46.)  *See supra* at nn. 7-8.  The Debtor

conducted discovery in this case, including deposition discovery.  He had the opportunity to contest the Debtor's proof on the amount of its damages and submit any evidence he may have to contradict the bank's evidence but failed to do so.  His mere denial of the Bank's proof of damages, therefore, will not preclude summary judgment. *See Luce*, 873 F.3d at 1008 n.31 ("[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion.").  Accordingly, there being no genuine issue of material fact on this issue, the court will enter a judgment in favor of the Bank on its claim under § 523(a)(2)(B) in the amount of $2,963,841.54.

## CONCLUSION

Based on the foregoing, the court grants summary judgment in favor of Busey Bank on its claim of non-dischargeability under § 523(a)(2)(B) and will enter judgment on Count II of its complaint to except from discharge the debt owed it by Timothy Cosman in the amount of $2,963,841.54.  The Bank 's motion for summary judgment is denied in all other respects.  A separate order will be entered to set the matter for trial on the counts remaining.

DATE: April 22, 2020

ENTER

Thomas M. Lynch
United States Bankruptcy Judge